# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| TERRANCE LAVELL KIRKSEY,<br><br>      Plaintiff,<br><br>v.<br><br>CORY BRENNAN, JAMES KREIN, IV, JAVIER VEGA, MYLES SMITH, STEPHEN VANG, JASON KENESIE, ROBERT SHREI, AARON DILLHOFF, and KENOSHA POLICE DEPARTMENT,<br><br>      Defendants. | Case No. 19-CV-1278-JPS<br><br><br>**ORDER** |

    Plaintiff Terrance Lavell Kirksey, who is incarcerated at Waupun Correctional Institution, proceeds in this matter pro se. On March 26, 2021, the Court screened Plaintiff's amended complaint and allowed Plaintiff to proceed on the following four claims: (1) unlawful search and seizure on December 26, 2018 and December 28, 2018, in violation of the Fourth Amendment, against the Officer Defendants; (2) unlawful arrest on December 28, 2018, in violation of the Fourth Amendment, against the Officer Defendants; (3) retaliation, in violation of the First Amendment, against the Officer Defendants, when Plaintiff was arrested on December 28, 2018; and (4) a *Monell* claim against the Kenosha Police Department for an alleged unconstitutional practice, custom, or official policy. ECF No. 27 at 7. On July 13, 2022, the Court issued a scheduling order with summary judgment motions due on or before January 6, 2023. ECF No. 48.

    On December 12, 2022, Defendants filed a motion for summary judgment. ECF No. 61. On February 3, 2023, the Court ordered Plaintiff to file a response on or before February 16, 2023 or accept the consequences of no brief in opposition. ECF No. 65. On February 15, 2023, Plaintiff filed a

motion for an extension of time to respond, indicating that he had never received Defendants' motion due to a mailing issue. ECF No. 67. That same day, Defendants filed an affidavit indicating that they mailed a new copy of the summary judgment materials on February 15, 2023. ECF No. 68.

On February 17, 2023, the Court granted Plaintiff's motion for an extension of time. ECF No. 69. The Court ordered Plaintiff to file any opposition on or before March 9, 2023. *Id.* That deadline has since passed, and Plaintiff has filed no opposition or otherwise responded. As such, Defendants' motion for summary judgment is ready for disposition. As discussed in detail below the Court grants Defendants' motion for summary judgment in full and will accordingly dismiss this case with prejudice.

1.  **LEGAL STANDARD — SUMMARY JUDGMENT**

    Under Federal Rule of Civil Procedure 56, the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

    The Court construes all facts and reasonable inferences in a light most favorable to the nonmovant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). In assessing the parties' proposed facts, the Court must not weigh the evidence or determine witness credibility; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010).

## 2. FACTUAL BACKGROUND

In compliance with the Court's order, Defendants submitted a statement of joint proposed material facts. ECF No. 62-1. As such, the following facts are taken directly from the parties' stipulated facts ("PSF"). Defendants also included a list of disputed facts as identified by Plaintiff. ECF No. 62-2.

On the night of December 26, 2018, Plaintiff drove his girlfriend, Alyssa Gutwasser, to Aurora Hospital for the treatment of her severe head injuries. PSF 1. In the early morning of December 27, 2018, Kenosha Police Officers responded to Aurora Hospital to investigate a potential battery of Ms. Gutwasser. PSF 2. Plaintiff told officers that Ms. Gutwasser had sustained significant head trauma after being jumped by a gang, and then falling in the bathroom of the apartment she shared with Plaintiff. PSF 3. While Plaintiff was in the waiting room at Aurora Hospital, he gave officers permission to enter his residence, located in Kenosha, WI, so they could complete their investigation. PSF 4.

On December 28, 2018, Ms. Gutwasser told Detective Brennan that Plaintiff had caused her injuries by hitting her, kicking her, and stomping on her face. PSF 5. Ms. Gutwasser informed Detective Brennan that she lived with her boyfriend (Plaintiff), Barbara Thomas, Andrew Billups, and her two minor children. PSF 6. Ms. Gutwasser told Detective Brennan that her two minor children had witnessed the assault, that she feared for her children's safety, and that she consented to officers entering her apartment. PSF 7. On December 28, 2018, Officer Krein was dispatched to Plaintiff's home. Officers knocked on the apartment and contacted Plaintiff. Plaintiff was asked to step into the hallway where he was placed under arrest. PSF 8. Plaintiff was not arrested in retaliation for any complaints about the Kenosha Police Department Plaintiff had made or that he had attempted to

Page 3 of 17
Case 2:19-cv-01278-JPS   Filed 03/21/23   Page 3 of 17   Document 70

make, but rather because there was probable cause to believe that he had committed the crime of substantial battery and domestic abuse. PSF 9.

Andrew Billups and Barbara Thomas advised Officer Krein that they had lived at the residence. Following Plaintiff's arrest, Officer Krein transported Ms. Thomas to the Kenosha Police Department's Detective Bureau, where she gave a statement to Detective Brennan. PSF 10. After Ms. Thomas gave a statement to Detective Brennan, Officer Krein Transported Ms. Thomas back to her residence at which time she consented to a search of the apartment. PSF 11.

Plaintiff was charged with substantial battery and domestic abuse, Kenosha County Case No. 19-CF-3. On November 19, 2019, Plaintiff pled guilty to felony aggravated battery-intentional bodily harm. PSF 12. As a part of the criminal proceedings, Plaintiff filed motions to suppress certain evidence seized in his apartment, based on his assertion that his arrest on December 28, 2018 had been unlawful, and that the subsequent search of his apartment on December 28, 2018 had also been unlawful. PSF 13. Judge Rossell ruled that Plaintiff had not been arrested inside his apartment, but rather that the arrest had occurred outside Mr. Kirksey's apartment in the hallway and that the arresting officers had probable cause to effect Mr. Kirksey's arrest. PSF 15. Judge Rossell also ruled that Ms. Thomas had authority to allow officers into the apartment. As such the motions to suppress evidence were denied. *Id.*

There is no practice or policy within the Kenosha Police Department of abusing citizens and/or ignoring their Constitutional Rights. PSF 15.

3.  ANALYSIS

Defendant's motion for summary judgment seeks dismissal of all claims in the case (i.e., the Fourth Amendment illegal search and seizure claims, the Fourth Amendment illegal arrest claim, the First Amendment

Page 4 of 17
Case 2:19-cv-01278-JPS    Filed 03/21/23    Page 4 of 17    Document 70

retaliation claim, and the *Monell* claim). As noted above, Plaintiff has failed to file any opposition to Defendants' motion. For the sake of completeness and in line with Seventh Circuit guidance, however, the Court has considered Defendants' motion for summary judgment to determine whether it states adequate grounds for the relief requested. *Bonvolanta v. Delnor Cmty. Hosp.*, 413 F. Supp. 2d 906, 908 (N.D. Ill. 2005) (citing *Nabozny v. Podlesny*, 92 F.3d 446, 457 n.9 (7th Cir. 1996) ("[T]he Seventh Circuit . . . requires that before granting a dispositive motion as unopposed, the trial judge must look at the motion to determine whether it states adequate grounds for the relief requested.")). As discussed below in detail, the Court grants summary judgment on all claims and will dismiss this case with prejudice.

### 3.1 Fourth Amendment — Seizure

Defendants argue that summary judgment is appropriate on the illegal seizure claim because the officers had reasonable suspicion to detain and question Plaintiff on the morning of December 27, 2019. ECF No. 62 at 4.

The Fourth Amendment protects people from unreasonable searches and seizures. Stopping someone is generally considered a seizure and ordinarily requires probable cause to be reasonable. *See Dunaway v. New York*, 442 U.S. 200, 213 (1979). In *Terry v. Ohio*, the Supreme Court recognized an exception to the probable-cause requirement. 392 U.S. 1 (1968). "Under *Terry*, police officers may briefly detain a person for investigatory purposes based on the less exacting standard of reasonable suspicion that criminal activity is afoot." *United States v. Eymann*, 962 F.3d 273, 282 (7th Cir. 2020) (citing *Terry*, 392 U.S. at 21–22). Reasonable suspicion is a lower standard than probable cause. *See Navarette v. California*, 572 U.S. 393, 397 (2014). It is a "commonsense, nontechnical [standard] that

deal[s] with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Ornelas v. United States*, 517 U.S. 690, 695 (1996) (citation omitted). It is judged holistically, based on "the sum of all of the information known to officers at the time of the stop." *See Matz v. Klotka*, 769 F.3d 517, 523 (7th Cir. 2014).

A *Terry* stop comes with limits. For a stop to "pass constitutional muster, the investigation following it must be reasonably related in scope and duration to the circumstances that justified the stop in the first instance so that it is a minimal intrusion on the individual's Fourth Amendment interests." *United States v. Robinson*, 30 F.3d 774, 784 (7th Cir. 1994). This means a *Terry* stop cannot continue indefinitely. *See United States v. Sharpe*, 470 U.S. 675, 685 (1985). A stop lasting too long becomes "a de facto arrest that must be based on probable cause." *United States v. Bullock*, 632 F.3d 1004, 1015 (7th Cir. 2011). One of three things must happen during a *Terry* stop: "(1) the police gather enough information to develop probable cause and allow for continued detention; (2) the suspicions of the police are dispelled and they release the suspect; or (3) the suspicions of the police are *not* dispelled, yet the officers have not developed probable cause but must release the suspect because the length of the stop is about to become unreasonable." *United States v. Leo*, 792 F.3d 742, 751 (7th Cir. 2015) (citations omitted).

Whether a *Terry* stop becomes unreasonably prolonged turns on the direction the Supreme Court provided in *United States v. Place,* 462 U.S. 696 (1983) and *United States v. Sharpe*, 470 U.S. 675 (1985). In *Place*, the Court declined to adopt any bright-line time limit. *See* 462 U.S. at 709. "Such a limit," the Court explained, "would undermine the equally important need to allow authorities to graduate their responses to the demands of any particular situation." *Id.* at 709 n.10. Two years after *Place* rejected a "hard-

and-fast time limit," the Court decided *Sharpe* and explained that when analyzing whether a *Terry* stop has exceeded a reasonable duration, courts should "examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *Sharpe*, 470 U.S. at 686 (citing *Place,* 462 U.S. at 709).

Here, the Court acknowledges that the facts related to Plaintiff's alleged detention at the hospital are severely lacking in detail. Plaintiff's amended complaint only vaguely states "several officers refused to let Plaintiff leave at his will and continued to question and antagonize him." ECF No. 21 at 2. It is undisputed that Plaintiff came to the hospital voluntarily and that Defendants were there to investigate what happened to his girlfriend, Ms. Gutwasser. It is unclear why Plaintiff felt he could not leave and it is also unclear if Plaintiff tried to leave and was unable to do so. Given the available facts, the Court is not even necessarily convinced that Plaintiff was seized within the meaning of the Fourth Amendment.

However, even assuming Plaintiff was seized, the Court finds that given the record before it, Defendants acted reasonably because they diligently pursued their investigation of who injured Ms. Gutwasser and it was necessary to detain Plaintiff during that investigation. *See Sharpe*, 470 U.S. at 686. In the early morning of December 27, 2018, Kenosha Police Officers responded to Aurora Hospital to investigate a potential battery of Ms. Gutwasser—who had serious injuries. *See* PSF 2. Plaintiff spoke to officers while in the public waiting room. ECF No. 63 at 5, Plaintiff's Depo. Plaintiff told Defendants that he had driven Ms. Gutwasser to the emergency room after she was assaulted by a gang and fell in their bathroom. *Id.* While Plaintiff was in the hospital waiting room, he gave officers permission to enter his residence to complete their investigation

and to speak with Mr. Billups and Ms. Thomas. PSF 4; *see also* ECF No. 63 at 5, Plaintiff's Depo. Given Ms. Gutwasser's serious injuries, the Defendants' initial questioning of Plaintiff after he brought her into the hospital was eminently reasonable. Plaintiff's answers increased the need to investigate when Defendants learned he was her significant other and Plaintiff told a strange story about a gang attacking Ms. Gutwasser. Nothing in the record indicates that Defendants unreasonably delayed their investigation or detained Plaintiff for any longer than was necessary. As such, the Court finds that no illegal seizure occurred, and the Court will accordingly grant Defendants' motion for summary judgment on this claim.

### 3.2     Fourth Amendment — Illegal Search

The Court first addresses the issue of what searches are at issue in this case. The Court's screening order, in hindsight, could certainly been clearer; it provided: "Plaintiff may proceed on a claim for a violation of his Fourth Amendment rights when his dwelling was searched without a warrant and when he was arrested." *See* ECF No. 27 at 6. Without any opposition from Plaintiff, it is not entirely clear what Plaintiff's position on any illegal search claims would be. Thus, in order to be thorough and cover all of Plaintiff's allegations, the Court addresses the legality of the following three searches: (1) the search of Plaintiff's apartment on December 27, 2018; (2) Defendants' entry into Plaintiff's home on December 28, 2018 without a warrant; and (3) Defendants' warrantless search of Plaintiff's home following his arrest.

#### 3.2.1     December 27, 2018 — Search of Plaintiff's Home

First, the Court easily dispels of any claim that the December 27, 2018 search of Plaintiff's home was illegal. The Fourth Amendment generally prohibits the warrantless entry of a person's home to perform a search or

Page 8 of 17
Case 2:19-cv-01278-JPS   Filed 03/21/23   Page 8 of 17   Document 70

seizure. *See Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) ("[S]earches and seizures inside a home without a warrant are presumptively unreasonable."); *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). But the prohibition does not apply when voluntary consent has been obtained, either from the individual whose property is searched, or from a third party who possesses common authority over the premises. *Id.* When a person allows a third party to exercise authority over his property, he assumes the risk that the third party might permit access to others, including government agents. *United States v. Terry*, 915 F.3d 1141, 1145 (7th Cir. 2019) (citations omitted). In a § 1983 case, once the defendant presents evidence that the plaintiff consented to the search, the burden shifts to the plaintiff to establish the lack of consent to search. *Valance v. Wisel*, 110 F.3d 1269, 1279 (7th Cir. 1997).

At his deposition, Plaintiff conceded that he allowed officers into his apartment on December 27, 2018 to complete their investigation. PSF 4. Given Plaintiff's lack of opposition, the Court has no independent basis to conclude that consent was not voluntarily given. Given Plaintiff's admission that he consented to the December 27, 2018 search, the Court finds that this search was reasonable. As such, the Court will grant Defendants' motion for summary judgment on this claim.

### 3.2.2 Warrantless Entry of Plaintiff's Home

Plaintiff maintained in his deposition that Defendants illegally entered his residence on December 28, 2018, to arrest him without a warrant. *See* ECF No. 62 at 6 (citing Plaintiff's deposition, ECF No. No. 63 at 8). Defendants do not concede that they arrested Plaintiff inside his residence. ECF No. 62 at 7. Defendants acknowledge this disputed fact, as they must at the summary judgment stage, and instead argue that even

taking Plaintiff's allegations to be true, any entrance into Plaintiff's residence to arrest him was lawful based on Ms. Gutwasser's consent. *Id.*

As established above, a warrantless search of a home is constitutionally permissible with consent. In this instance, the undisputed facts show that Ms. Gutwasser resided with Plaintiff. *See* PSF 6; *see also* ECF No. 63 at 9 (Plaintiff admitting in deposition that Ms. Gutwasser lived with him). The undisputed evidence also shows that Ms. Gutwasser provided consent for the warrantless entry into Plaintiff's home on December 28, 2018. PSF 7; *see also* ECF No. 63 at 15 (Plaintiff admitting in deposition that he had no idea if Ms. Gutwasser gave officers permission to enter the home). Defendants' evidence shows that Ms. Gutwasser had authority to consent to the search of Plaintiff's residence. Plaintiff has failed to file any opposition and thus failed to establish the lack of consent to search. As such, the Court finds that the Defendants' warrantless entry into his home on December 28, 2018 was reasonable, and the Court will grant Defendants' motion for summary judgment on this claim.

### 3.2.3 Warrantless Search Following Plaintiff's Arrest

Finally, Plaintiff claims that following his arrest on December 28, 2018, Defendants unlawfully entered and searched his residence. ECF No. 27 at 7. Defendants argue they are entitled to summary judgment because Ms. Thomas had apparent authority to consent to their entry and search. ECF No. 62 at 7.

The Fourth Amendment's prohibition against warrantless entry into the home does not apply when officers have obtained voluntary consent from the individual whose property is to be entered or from a third party who possesses common authority over the property. *Rodriquez*, 497 U.S. at 177. The Supreme Court has clarified that a warrantless entry based on a third-party's consent is reasonable under the Fourth Amendment as long as

Page 10 of 17
Case 2:19-cv-01278-JPS    Filed 03/21/23    Page 10 of 17    Document 70

the police reasonably *believed* that the third party had common authority over the property, even if it is later discovered that the third party did *not* have common authority over the property. *Id.* at 186–89.

Here, the undisputed facts establish that Ms. Thomas gave officers consent to search Plaintiff's residence following his arrest on December 28, 2018. PSF 11. Plaintiff maintained in his deposition that Ms. Thomas did not live with Plaintiff, and Plaintiff would therefore likely argue that she did not have common authority over the property to give consent for the search. Nonetheless, the Court finds that Defendants' search of the property was reasonable given Plaintiff's apparent authority. Ms. Thomas told the officers that she lived at the residence. PSF 10. Following Ms. Thomas's statement at the Kenosha Police Department, Officer Krein transported Ms. Thomas back to the residence where she consented to a search of the apartment. PSF 11. Based on these facts, the Court finds that Defendants reasonably believed that Ms. Thomas had common authority over the property to provide consent to search. The Court therefore finds the search of Plaintiff's residence following his arrest was reasonable, and will accordingly grant Defendants' motion for summary judgment on this claim.

### 3.3 Fourth Amendment — False Arrest

The Court allowed Plaintiff to proceed on a Fourth Amendment claim for his unlawful arrest on December 28, 2018. ECF No. 27 at 7. Defendants maintain the arrest was lawful because Defendants had probable cause to arrest Plaintiff. ECF No. 62. At 6. Defendants do not identify any specific crime that they had probable cause to arrest for; instead, they simply state that "a reasonable officer would have believed that Mr. Kirksey had assaulted Ms. Gutwasser." *Id.*

Probable cause is an absolute bar to a § 1983 claim for false arrest. *Montano v. City of Chicago,* 535 F.3d 558, 568 (7th Cir. 2008); *Reynolds v. Jamison,* 488 F.3d 756, 765 (7th Cir. 2007). A police officer has probable cause to arrest if a reasonable person would believe, based on the facts and circumstances known at the time, that a crime had been committed. *McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009) (citing *Beck v. Ohio,* 379 U.S. 89, 91 (1964)). Normally, an officer may base a determination of probable cause on information from the putative victim if the officer reasonably believes that the victim is telling the truth. *Id.* An officer should pursue reasonable avenues of investigation and may not close his eyes to facts that would clarify the situation, but once an officer has established probable cause, he may end his investigation. *Id.* The Supreme Court has made clear that "an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). Since that decision, the Seventh Circuit has held that "'an arrest can be supported by probable cause that the arrestee committed any crime.'" *Jump v. Village of Shorewood*, 42 F.4th 782, 789 (7th Cir. 2022) (quoting *Abbott v. Sangamon County, Ill.,* 705 F.3d 706, 715 (7th Cir. 2013)).

Despite Defendants' failure to identify a specific crime in their argument, Plaintiff was eventually charged with substantial battery and domestic abuse, Kenosha County Case No. 19-CF-3. Plaintiff later pled guilty to felony aggravated battery-intentional bodily harm. PSF 12. Wisconsin's criminal battery statute, Wis. Stat. § 940.19. Section 940.19 establishes criminal liability for both simple battery ("[w]hoever causes bodily harm to another by an act done with intent to cause bodily harm to that person or another without the consent of the person so harmed is guilty of a Class A misdemeanor," *id.* § 940.19(1)) and substantial battery ("[w]hoever causes substantial bodily harm to another by an act done with

intent to cause bodily harm to that person or another is guilty of a Class I felony," *id.* § 940.19(2)). Both simple and substantial battery share three elements: (1) causation, (2) harm, and (3) intent. *See State v. Martin*, 456 N.W.2d 892, 895 (Wis. Ct. App. 1990). Simple battery adds a fourth element, that the act is done without the consent of the person harmed. Wis. Stat. § 940.19(1); *see State v. Giwosky*, 326 N.W.2d 232, 234–35 (Wis. 1982) (citing "the four elements of [simple] battery" as bodily harm, causation, intent, and lack of consent). Criminal intent in Wisconsin can be inferred from a party's overt acts and conduct and inferences fairly deducible from the circumstances. *State v. Lunz*, 273 N.W.2d 767, 772 (Wis. 1979). The levels of harm are statutorily defined. " 'Bodily harm' means physical pain or injury, illness, or any impairment of physical condition," Wis. Stat. § 939.22(4), while "'[s]ubstantial bodily harm' means bodily injury that causes a laceration that requires stitches, staples, or a tissue adhesive; any fracture of a bone; a broken nose; a burn; a petechia; a temporary loss of consciousness, sight or hearing; a concussion; or a loss or fracture of a tooth," *id.* § 939.22(38).

   Here, the Court finds that Plaintiff's arrest on December 18, 2018 was lawful because the undisputed facts show the defendant officers had probable cause to arrest him for battery. On December 26, 2018, Plaintiff drove his girlfriend, Ms. Gutwasser, to Aurora Hospital for the treatment of her severe head injuries. PSF 1. On December 27, 2018, Defendants responded to Aurora Hospital to investigate a potential battery of Ms. Gutwasser. PSF 2. Although Plaintiff told the officers that Ms. Gutwasser's injuries were caused by a gang and then falling in the bathroom, *see* PSF 3, Ms. Gutwasser later told Detective Brennan on December 28, 2018, that Plaintiff had caused her injuries by hitting her, kicking her, and stomping

on her face. PSF 5.[1] Based on these facts, a reasonable person would have believed that Plaintiff committed the crime of battery. Although Ms. Gutwasser was the victim accusing Plaintiff, nothing in the record indicates that Defendants had any reason to think Ms. Gutwasser was not telling the truth. The fact that Ms. Gutwasser waited over a day to accuse Plaintiff does not affect Defendants' reasonableness in believing her story. After all, "[a]cts of domestic violence often are intended to dissuade a victim from resorting to outside help, and include conduct designed to prevent testimony to police officers or cooperation in criminal prosecutions." *Giles v. California*, 554 U.S. 353, 377 (2008). As such, the Court finds that Defendants had probable cause to arrest Plaintiff on December 28, 2018, for battery.

### 3.4 First Amendment — Retaliation

The Court allowed Plaintiff to proceed on a claim for a violation of his First Amendment rights when he was allegedly arrested in retaliation for attempting to submit a complaint against the Kenosha Police Department. ECF No. 27 at 6. Defendants argue that Plaintiff's First Amendment retaliation claim fails as a matter of law because Plaintiff fails to provide any proof of retaliatory treatment. ECF No. 62 at 9. Specifically, Defendants argue that Plaintiff's claim fails because Defendants had probable cause to arrest him.

---

[1] The Court identifies a discrepancy in Defendants' filings. Defendants' joint statement of undisputed facts provides that it is undisputed that Ms. Gutwasser told Detective Brennan that Plaintiff had caused her injuries. *See* PSF 5. However, Defendants' proposed disputed material facts provides the same fact. ECF No. 62-2 ¶ 2. Under normal circumstances, it would be unclear if this fact is disputed. However, given Plaintiff's lack of any opposition, Plaintiff fails to address Defendants' assertion. As such, the Court will consider the fact undisputed for the purposes of this motion. *See* Fed. R. Civ. P. 56(e)(2).

In *Nieves v. Bartlett*, ––– U.S. ––––, 139 S. Ct. 1715, 1724, 204 L.Ed.2d 1 (2019), the Supreme Court held that probable cause typically defeats a claim for retaliatory arrest. As discussed in detail above, the Court finds that Defendants had probable cause to arrest Plaintiff. That does not, however, entirely end the analysis of this issue.

The *Nieves* rule has at least one important exception, which recognizes that police often "have probable cause to make arrests" for a wide range of minor offenses "but typically exercise their discretion not to do so." *Id*. at 1727. A plaintiff who cannot plead and prove an absence of probable cause can still succeed if he shows objective evidence that he was "arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* For example, the *Nieves* majority wrote that if a plaintiff critical of police brutality is arrested for jaywalking, that plaintiff might prevail on a retaliatory arrest claim by showing that "jaywalking is endemic but rarely results in arrest." *Id.* Likewise, a plaintiff might prevail by pointing to similarly-situated comparators, statements from arresting officers or other police officials, or a wide range of other "objective evidence" of retaliation. See *Lund*, 956 F.3d at 945 (citing *Nieves*, 139 S. Ct. at 1727).

Here, Plaintiff has provided zero evidence or argument that this is the type of case where officers improperly exercised their discretion. Without evidence to the contrary, the Court has no reason to believe that the exception to *Nieves* applies in this case. As such, the Court finds that Plaintiff's First Amendment retaliatory arrest claim fails as a matter of law because Defendants had probable cause to arrest him. The Court will accordingly grant Defendants' motion for summary judgment on this claim.

### 3.5 *Monell* Claim

Finally, Plaintiff brought a *Monell* claim against the Kenosha Police Department for its alleged unconstitutional practice, custom or official policy. ECF No. 27 at 7. Based on the Court's analysis above, however, Plaintiff's *Monell* claim must be dismissed because there is no underlying constitutional violation.

To be liable for an unconstitutional policy, "[t]he municipal policy or practice must be the 'direct cause' or 'moving force' behind the constitutional violation, which a plaintiff may show directly by demonstrating that the policy is itself unconstitutional." *Minix v. Canarecci*, 597 F.3d 824, 832 (7th Cir. 2010). "[I]f no constitutional violation occurred in the first place, a *Monell* claim cannot be supported." *Petty v. City of Chicago*, 754 F.3d 416, 424 (7th Cir. 2014); *see also Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 504 (7th Cir. 2010) ("[A] municipality cannot be liable under *Monell* when there is no underlying constitutional violation by a municipal employee."). The Court has already concluded that Plaintiff failed to demonstrate that a constitutional violation occurred. Because Plaintiff has suffered no violation of his rights, there can be no municipal liability. Accordingly, the Court will grant Defendants' motion for summary judgment on the *Monel* claim.[2]

### 4. CONCLUSION

Despite ample opportunity, Plaintiff failed to oppose Defendants' motion for summary judgment. For the reasons explained above, the Court has independently analyzed Defendants' motion and grants summary

---

[2] Defendants also argued that Plaintiff's claims are barred by *Heck v. Humphrey,* 512 U.S. 477 (1994). ECF No. 62 at 14. Because the Court grants summary judgment on the merits of the claims, the Court need not address this argument.

judgment as to all claims. The Court will accordingly dismiss this case with prejudice.

Accordingly,

**IT IS ORDERED** that Defendants' motion for summary judgment, ECF No. 61, be and the same is hereby **GRANTED in full** as provided in this Order; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 21st day of March, 2023.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

---

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.